ŚKUBINSKY et al. v. BODEK.

(Circuit Court of Appeals, Third Circuit. May 24, 1909.)

No. 16.

BANKRUPTCY (§ 114*)—AUTHORITY OF RECEIVER—REFUSAL OF BANKRUPT TO
SURRENDER PROPERTY TO AGENT—CONTEMPT.

It is at least doubtful whether a receiver appointed for the property of
an alleged bankrupt on the filing of an involuntary petition against him,
in the absence of an express provision to that effect, can delegate to an-
other his authority originally to take possession of the property; and in
any event the alleged bankrupt or members of his family cannot be held
in contempt of court for a refusal to surrender property or books and
papers to one claiming to represent the receiver, but who produces no
written evidence of his authority.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 166; Dec. Dig.
§ 114.*]

Appeal from the District Court of the United States for the Eastern
District of Pennsylvania.

Appeal from order adjudging petitioners in contempt.

Clinton O. Mayer, for appellants.

Alfred Aarons and Henry N. Wessel, for appellee.

Before GRAY and BUFFINGTON, Circuit Judges, and BRAD-
FORD, District Judge.

BRADFORD, District Judge. This proceeding, although termed
a petition for review, is in substance an appeal from an order of the
District Court of the United States for the Eastern District of Penn-
sylvania, adjudging Fritz Skubinsky, an alleged bankrupt, and his
wife, Fanny Skubinsky, in contempt, and imposing fines on them.
For it not only appears that the petitioners prayed for and were al-
lowed an appeal from the order in question, but the case as it is pre-
sented to us presents matter of fact as well as of law. A petition in
involuntary bankruptcy was filed by Wolf Bodek and others against
Fritz Skubinsky November 3, 1908, and on the same day Bodek was
appointed receiver of the estate of the alleged bankrupt. The order
of appointment authorized and directed the receiver to cause an in-
ventory and appraisement of such assets and effects as should come
into his possession to be made and directed the alleged bankrupt forth-
with to turn over and 'deliver to the receiver all books, papers, deeds
and documents bearing upon or relating to his business and affairs.
After duly qualifying for the discharge of his duties as receiver Bodek
presented November 6, 1908, a petition to the court below in which,
among other things, it was in substance alleged that the petitioner in
accordance with the directions contained in the order appointing him
went to the former place of business of the alleged bankrupt at No.
703 South street, Philadelphia, for the purpose of performing his
duty; that the alleged bankrupt and his wife and one Dubin, together
with the children of the alleged bankrupt and his wife, interfered
with the receiver "in the performance of his duties, concealing prop-

erty from him, interfering with his search for goods in the premises 703 South street, hindering him in his attempt to secure the papers which were at said premises," and further, that the receiver's "representatives and deputies were assaulted by the persons above mentioned"; that "large quantities of the papers bearing upon the business of the alleged bankrupt were unlawfully destroyed by the parties above mentioned"; and that "when your petitioner undertook to take possession of large quantities of goods which had been hidden in the dwelling portions of the premises aforesaid, the said alleged bankrupt, his wife and the said Dubin, attempted to prevent him from taking possession of said goods, and again assaulted his representatives and created great disturbance." The petition concluded with a prayer for an attachment returnable forthwith against the alleged bankrupt, his wife and Dubin for contempt. On the same day, November 6, 1908, the alleged bankrupt and his wife, not having been served with process, voluntarily appeared, and evidence having been adduced and heard they were adjudged guilty of contempt, and it was ordered that Skubinsky pay a fine of $100 and "all costs of the proceedings on attachment, including stenographer's fees and charges," and his wife a fine of $150.

It appears from the record, and is not denied, that the receiver was not personally present at the time and place of the commission of the alleged contempt. He had requested his partner in business, Joseph J. Rabinovitch, to act for him on the occasion by way of discharging his duties as receiver. Rabinovitch did not obtain from the receiver any written instrument authorizing or purporting to authorize him to act in the place and stead of the receiver; but he took with him and exhibited and explained to the alleged bankrupt and his wife on the premises a certified copy of the appointment of the receiver which he had procured from the clerk's office. The order of appointment of the receiver in the present instance did not in terms authorize him to constitute agents for the purpose of originally acquiring possession of the property and assets of the alleged bankrupt in the absence of their principal, and it is at least doubtful whether there was any authority on the part of Rabinovitch acting as the alleged agent or representative of the receiver to assert and enforce the authority conferred upon the latter under his appointment. Authority to appoint and act through agents or custodians for the preservation and management of the property of a bankrupt after the receiver has once taken possession seems quite distinguishable from authority to create an agency for the original taking of possession. Authority of the former kind in many instances, without express provision, may be implied from the fact of the constitution of the receivership. But we are not prepared, nor is it necessary, to hold that a receiver can in the absence of a provision to that effect, delegate to another his authority originally to acquire possession. Other considerations are decisive.

Contempt proceedings in such a case as the present are quasi criminal in their nature and it should be made clearly to appear that the persons charged knowingly and wilfully disregarded or set at defiance the order of the court. The order of appointment did not direct that

any portion of the estate of the alleged bankrupt should be turned over to Rabinovitch or to any alleged agent of the receiver. It provided that the alleged bankrupt should "forthwith turn over and deliver to the said receiver all books, papers, deeds and documents bearing upon or relating to his business and affairs." If it be assumed that the receiver had power to appoint and did appoint Rabinovitch to act for him on the occasion in question, Rabinovitch made no sufficient disclosure to the alleged bankrupt or his wife of the existence of such authority. He did not show them any instrument in writing purporting to confer it, and they were under no obligation to accept as true his mere oral assertion, or that of the witness Sternberger, that Rabinovitch had been authorized by the receiver. Indeed, the fact that a certified copy of the order appointing the receiver was exhibited and explained to them, justified them in refusing to turn over any portion of the estate of the alleged bankrupt to any other person than the receiver named in such order, in the absence of evidence satisfactory to them that such other person had authority to enter into possession in behalf of the receiver. It appears from the evidence that some bills or other papers presumably relating to the business and affairs of the alleged bankrupt were torn or destroyed at the time Rabinovitch undertook to enter into possession. If those bills or papers, after the certified order of appointment had been exhibited and explained, had been wilfully torn up by the alleged bankrupt and his wife, or either of them, for the purpose of destroying all evidence of their contents, the case would have presented a materially different aspect. This aspect, however, we are not called on to discuss or consider; for, notwithstanding some loose testimony given by Rabinovitch, we are, from the evidence, inclined to believe that whatever papers were torn or mutilated by the appellants or either of them were so torn or mutilated in a struggle with Rabinovitch, not for their destruction, but for their possession, to which they were entitled in the absence of a sufficient disclosure to them of authority on the part of Rabinovitch to demand and remove the same. The evidence falls short of the clear proof required to establish a wilful defiance by the alleged bankrupt and his wife, or either of them, of the authority of the court below.

The order appealed from, therefore, must be reversed, with costs, and it is so ordered.