In re WILKES–BARRE LIGHT CO.

WILKES–BARRE LIGHT CO. v. WEST LUMBER CO. et al.

(Circuit Court of Appeals, Third Circuit. November 7, 1913.)

No. 1,760.

BANKRUPTCY (§ 97*) — INVOLUNTARY PROCEEDINGS — EXAMINATION OF BANK-
RUPT.

Where proceedings in involuntary bankruptcy against a corporation
had been at issue on the petition, demurrer, and answers denying in-
solvency for 18 months without being brought to a hearing, a creditor was
not entitled to an order for an examination under Bankr. Act July 1,
1898, c. 541, § 21a, 30 Stat. 552 (U. S. Comp. St. 1901, p. 3430), without a
showing of present necessity.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 139; Dec.
Dig. § 97.*]

Petition for Review from the District Court of the United States
for the Middle District of Pennsylvania; Charles B. Witmer, Judge.

In the matter of the Wilkes-Barre Light Company, alleged bankrupt.
On petition to revise an order of the District Court, and motion to
quash the same. Motion denied, and order reversed.

Edmund G. Butler, of Wilkes-Barre, Pa., and J. B. Colahan, 3d,
of Philadelphia, Pa., for petitioner.

Geo. J. Llewellyn, of Wilkes-Barre, Pa., for respondents.

Before GRAY, BUFFINGTON, and McPHERSON, Circuit
Judges.

J. B. McPHERSON, Circuit Judge. On January 24, 1912, a cred-
itors' petition was filed against the Wilkes-Barre Light Company. In-
solvency was averred, and it was also charged that the company had
applied to a state court for the appointment of a receiver. The Dis-
trict Court appointed its own receiver on the same day, and the re-
ceivership is still in existence, although there are now three receivers,
instead of one. On February 14 the company demurred to the petition,
assigning five reasons, one of them being the lack of jurisdiction; and
on the same day three answers were filed, two by intervening creditors
and one by stockholders and bondholders. The answers denied the
material averments of the petition, and denied also that one of the peti-
tioning creditors had a provable debt. On February 17 the petitioning
creditors, the Light Company, and the intervening creditors agreed—

"That a stipulation be entered into to file in the (District) Court agreeing
and requesting the said court to grant a suspension of the proceedings in this
case until such time as either the petitioning creditors, or the alleged bank-
rupt, or those appearing, give 10 days' notice to the other party for the re-
sumption of the proceedings.

"That neither party hereto waives any right of offense or defense now ap-
pearing upon the record, or that may arise in the future.

"This agreement and proceedings are for the purpose of harmonizing all
conflicting interests and promoting the business of the company, and securing
a full enjoyment of its franchise."

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

The stipulation thus contemplated was filed on March 11, and it adds a request that the court will "permit this stipulation to be filed and [will] consent to the terms thereof"; but the record before us does not show that the court took any formal action thereon. Apparently, however, the stipulation was respected in substance by the parties concerned, although the docket entries show some activity of one kind or another during the period between March 11, 1912, and May 24, 1913. Among the proceedings during this period is a petition by the attorney for certain creditors, under date of July 10, asking for an order upon 10 days' notice directing the company to submit to an examination before the referee under section 21a. The principal reason stated was an averment that the receivers were about to enter into a contract with the city of Wilkes-Barre for municipal lighting, and that these creditors believed the contract would be disadvantageous. The company and the receivers answered the petition, and on September 14 the court in effect dismissed it on the ground that the attorney had not even signed it himself, but that another attorney had signed it for him. Ten months later, on May 24, 1913, the application was renewed, but now upon different grounds, which were thus stated:

"That your petitioner, by its attorney, George J. Llewellyn, requested permission of the present receivers to examine the books of the said bankrupt, which permission was granted, but later your petitioner was informed by its said attorney that the receivers were unable to procure the books which your petitioner requested.

"That stock to the amount of one hundred thousand ($100,000.00) dollars has been issued, and bonds to the amount of one hundred thousand ($100,-000.00) have also been issued, in the first issue; also that first and refunding six per cent. bonds to the amount of one million ($1,000,000.00) dollars prior to the time that the petition in bankruptcy was filed.

"That your petitioner believes and expects to be able to prove that all the stock issued has been disposed of, and that all of the first issue of bonds, namely, one hundred thousand ($100,000.00) dollars has been sold.

"That he is unable to find out how much of the first and refunding six per cent. bonds has been sold, if any.

"That if the funds realized from the stocks and bonds sold had been used in payments of the debts, there would have been enough money to have paid all indebtedness, and left enough for running expenses for a number of years."

The company and the receivers answered this new petition, denying inter alia the court's power to make the order prayed for. The company denied also the averments of the petition concerning the stocks and bonds, and set up various other objections as follows:

"Respondent avers that the petition is absolutely without merit; it does not aver any necessity for, or benefit to be derived from, the examination of the alleged bankrupt, its acts, conduct, and property, and is without jurisdictional averments; the only act complained of, to wit, the contemplated contract with the city, is that of the receivers, and not of the company; the petition is irregular, defective, and without proper affidavit.

"Respondent most respectfully and earnestly represents unto your honor that the present proceedings before your honor, to procure an order to examine the acts, conduct, and property of the alleged bankrupt, is only one of a series of acts had in the proceedings in this case to irritate, inflame, and aggravate animosities, to annoy individuals, and calculated to result in injury to and depreciation and loss of the property of the respondent, and the interests and estates of creditors, bondholders, and stockholders, and your respondent is informed and has reason to believe that this proceeding by this

petition is in the interests of the Wilkes-Barre Company, the old company, engaged in the same business as your respondent, and with whom respondent is in active competition.

"Respondent is further advised and represents unto your honor that the effort of the petition is to procure a preference and payment of their several alleged claims to avoid the expense and annoyance of continuance of these proceedings under this petition."

The record shows nothing further until June 24, when the District Court made an order directing "all parties interested" to appear before the receiver "and then and there submit to an examination under the acts of Congress relating to bankruptcy." On June 26, the court refused to vacate this order, whereupon the company was allowed this petition to revise.

We note in passing the indeterminate language of the order, which is directed generally to "all persons interested," and does not specify the person or persons that are to appear and be examined. This might, perhaps, present difficulties in an effort to enforce the order, but we do not rest our decision upon the uncertainty of the quoted phrase. Neither do we see any need to rest the decision upon Skubinski v. Bodek, 172 Fed. 340, 97 C. C. A. 38, 22 Am. Bankr. Rep. 699. On other grounds than were considered in that case, we are of opinion that the order now under review should not have been made. The application therefor did not show an emergency that called for immediate and exceptional action. The bankruptcy petition had been drifting along for nearly 18 months, and (so far as the record discloses) no effort had been made to determine the issues presented by the creditors' petition and the demurrer and the answers thereto. The petition asking for the order of June 24 set up nothing that was not equally relevant upon the issue of the company's insolvency, and that question was already in controversy and undetermined. Of course no adjudication could be entered until the questions raised by the demurrer and the answers should be disposed of in the orderly course of procedure, and in our opinion no reason was presented that justified the interruption of that course. Even if we assume that in some emergencies a District Court may properly go into a preliminary examination of important matters, we are still of opinion that no such situation was presented here. Nothing had been done, and nothing was threatened, that required the unusual remedy of section 21a.

The motion to quash is refused. The order of the District Court under date of July 24, 1913, is reversed, at the cost of the respondents in this proceeding.